Good morning. Welcome. Our first case today is Lasche v. State of New Jersey. Mr. Laffey. May it please the court, Michael P. Laffey, attorney for the plaintiffs Michael and Jennifer Lasche. I would like to reserve two minutes for rebuttal, your honor. Granted. The primary issue before this court is did the plaintiffs plead sufficient facts to defeat a motion to dismiss? Accepting all the facts in the complaint is true. Did they state a plausible claim that they were discriminated against on the basis of their religious beliefs? The belief in question is their belief that homosexuality is a sin. And they stated that belief on at least one occasion to the child. What are those facts? Briefly, the division hid from the plaintiffs that the child was being considered for adoption by a same-sex couple where they did not hide that from other foster parents who were fostering this child's siblings. Subsequently, a different decision was made and it was decided that the children would be adopted by their individual foster parents, my clients being one of them. But after that, on at least two occasions, the foster child was questioned about her religious beliefs regarding the issue of homosexuality. But at the same time, and this is important for context, the division workers also attempted to convince her that she did not want to be adopted by my clients. All right. The district court focused on. Sir, don't you agree, though, that inquiries into the child's religious and the adopted parents' religious beliefs are permitted and even required? And I'm referring, of course, to the decision in Ray E. They may be able to inquire, Your Honor, but I don't think that they can take adverse action against my clients merely on the basis of those beliefs. And you have to look at these facts as a whole. You can't. And that's what the court below did is they isolated these facts. You can't isolate the fact that they questioned your child. At the same time, they berated the clients. You have to take the facts as a whole. Let me just let me just let me just get in here, because a lot of your briefing in your argument so far today focuses on one aspect of the First Amendment. There is a discrimination on religious. But it's right that there are parts of your also talk about the communicative elements here. Judge Phipps, your video is not Judge Phipps, your video is not working properly. There's a lot of lag here. Judge Hardiman, this is Greg. If Judge Phipps can hear me, perhaps you might want to disconnect and reconnect. And I think that could improve the connection. All right, I'll do that. Thank you, Judge. You can stop the clock, please, Ms. Fidler. Thank you. All right, Judge, can you hear me all right? Judge Phipps, can you hear me? Yeah. All right. Thank you. All right. Why don't you try your question again, Judge Phipps? Thank you. So a lot of what your focus has been so far has focused on one component of the First Amendment, free exercise and discrimination as a result of free exercise. Is there any aspect of your case that also focuses on free speech and the communication of ideas, albeit religious ideas, to foster children, and whether or not free speech has been subject to some form of content-based or viewpoint discrimination? Yes, sir, it certainly does. I mean, it's clear that, well, the Division, obviously, in our opinion, didn't like my client's religious beliefs, but I think they also objected to the fact that that belief was communicated to the child, and that that was one of the reasons why they tried to convince the child not to be adopted by my clients, and while they ultimately terminated my client's relationships with the child. All right, but as far as causation goes, I think you've got a problem on the issue of because you've got a state court order authorizing that. If you wanted to challenge that, you should have challenged that in state court, right? Well, Judge, we're not looking to undo what happened. Any damages my client has is nominal. What we're looking for is injunctive relief that my clients can be reinstated as foster parents because they were suspended without being told, and that they can participate in the system without discrimination moving forward. All right, fine. So you want injunctive relief, but there, again, you've got perhaps a problem because your official capacity claims are no longer alive. You just have individual capacity claims against the individual defendants, correct? That's correct. Okay, so what would that relief look like? You would be asking that Higgins and Epperle would be enjoined from doing what? Well, there are a number of division workers that were involved in this, and there are some of them whose names we don't know, but all of the workers who were involved in this, we would ask an injunction that they, in the future, allow my client to be foster parents and to be considered for adoption without being discriminated against because of their religious beliefs or because of their communications with the child. All right, and let me make sure I understand the crux of your argument about your client's religious beliefs. The district court focused, as I read the opinion, on the rights of the biological parent to have the child raised in a certain religious belief system, but I didn't understand that to be your argument. I understand your argument not to be that you have to honor the biological parent's wishes because I didn't see anything in the record here as to what the biological parent's religious views were, if any. I understand your argument to be that your clients don't need to hide their own religious beliefs from the foster children that they are fostering. Do I understand your argument? That's exactly correct, Your Honor. They do not have to hide. There's no division rule that states that. No rule has been put forward. My clients state in the complaint that they're not aware of any rule to that extent, but more importantly, we may not even have to reach that point because by the time these facts occurred, the parental rights had been terminated. These parents no longer had any rights with regard to this child. So, I mean, at one level, it seems that we don't have it sufficient. I mean, what's the hook then for an injunction? You know, my clients go into, want to be reinstated as foster parents, okay? Why not declare it to a judgment? Why not just say, hey, look, what, you know, maybe there was, they have this right, and I don't, maybe that's not what you want. Maybe that's not available to you, but injunction is pretty strong against individual capacities of what? Indefinite duration? Well, I don't see how there is any other way, Judge, to discourage the division from engaging in this type of discrimination moving forward. Aren't public officials presumed to follow the law and act in good faith? And if there was a declaratory judgment, wouldn't there be a presumption that they would follow that? I could amend the complaint to seek declaratory judgment, Your Honor. I think I'm entitled to injunctive relief at the very least with regard to the claim for them to be reinstated as foster parents. But why not just seek reinstatement in the state system and see what happens? And if they turn you down, I mean, your clients have a history of fostering besides this case, correct? That's correct. So you go to the state system, you apply to have their foster rights reinstated, and it's granted, and there's no problem, right? Well, our claim was originally filed in the state courts, Your Honor, and it was removed to the federal courts by the state. So you can't pursue administrative relief in the state system? I mean, but I would assume that getting on the roster as an acceptable prospective foster parent is a matter of state administrative procedure. It's not really a court matter, or is it a family court matter? How does one go about doing that? You're probably judged through an administrative process for that, but we were also looking for a ruling from a court that we weren't to be discriminated against in moving forward. And that's, by the way, one of the reasons why we had the New Jersey law against discrimination complaint as part of our... But I guess I'm struggling with why should we assume... Let's assume for a minute your clients did face some discrimination here because of the way the facts played out. Why should we assume that they will be discriminated against again? Are you claiming that this is not a moot case because it's capable of repetition, but evading review? Well, yes. It just seems like your remedy is to go to the state administrators and say, hey, my clients would like to be foster parents. And if that request is granted, you don't have a problem. If the request is denied, then perhaps you have a problem because, well, why was it denied? Well, it was denied because we don't like your clients' religious views, right? You know, Judge, if they were reinstated, that would not stop the division workers from, in the future, from stopping them from being considered for adoption, for instance. Okay, that is part of this claim also. They were taken out of consideration for adoption because... But you're not challenging the fact that they were deprived of this adoption. You've been candid about that. No, that wouldn't be fair to the child, to be quite frank, Your Honor. Admittedly, there's no right to adopt a specific child, but we do have a right to be considered for adoption, okay, as adoptive parents, free of nothing to stop the division from doing the same thing moving forward, not considering discriminating against my client when they seek to be adoptive parents. Counsel, let's back up a little bit. And could you articulate in just so many words the facts which show that you have been denied equal treatment and your First Amendment claim, what are the facts? And in what way does the Ladd claim differ in any way from those constitutional claims? What are the facts that back up these claims? Well, Judge, as I said, the fact that they questioned the child about these religious beliefs at the same point... Well, they're allowed to do that, aren't they? They're allowed to question the child and the parents to see what's a good fit. I mean, that's... They are, Your Honor. But they're not allowed to try to convince the child not to be adopted by my clients because they don't like those religious beliefs. What did they do that put their foot in the ability of your client to be a foster parent? They suspended them. And they took this child out of my client's foster home. So what happened next, Your Honor? Aren't they allowed to do that if they thought it was in the best interest of the child, even after talking to the parents and the child concerning the religious beliefs of both? And we allege that it wasn't in the best interest of the child, Judge, for a number of reasons. One, it's not what the child wanted, who was a teenager. It was against the recommendation of the law guardian that was appointed to represent the child's interests. And we allege that there's a psychological report that says this child should not be adopted with a sibling, which is what the division went ahead with, because of the fact that this child was parentified as the oldest child during the horrific childhood that they had, and that it was not in this child's psychological best interest to be adopted into a family with her siblings. So if you look at those facts most favorably to the plaintiffs, I think that leads one to believe that the division might have acted not in the best interest of the child because they didn't like my client's beliefs or the fact that my client stated those beliefs. Do you have any separate facts that deal with the Ladd claim, aside from the two constitutional claims? No, the facts would overlap, Your Honor. There are no real facts in addition to the constitutional claim that underlies the Ladd claim. Is that correct? That would be correct, Your Honor. Then let us put it this way. When you can see that if it does not go well for you in this appeal, there's really nothing left concerning the Ladd claim. The Ladd claim was not adjudicated in the district court because they felt under Doe that the DCPP is not a public accommodation. That's correct. So that Ladd claim was not adjudicated. That's correct. But you have nothing in addition to the constitutional claims that would underlie the Ladd claim. The same facts would apply to both claims, Your Honor. Thank you. Just briefly, on your equal protection claim, don't you need some comparators? Judge, I addressed that in my brief. In this case, I don't think that analysis works because of the secrecy of the system. My client has no way to know if parents were treated differently. This is much more similar. And the cases that were cited in support of that, for instance, dealt with plaintiffs who didn't set forth a basis for the unequal treatment. They didn't say they were in a protected class. So my clients have said they're in a protected class, and they have alleged discrimination on the basis of being in that protected class, the protected class being religious. And my argument is that this should be treated, for analysis purposes, more like an employment discrimination claim, where once we show that we're in a protected class and that retaliatory action was taken against us, that the burden should then shift to the state to show that there was a non-discriminatory reason for that disparate treatment. Okay. All right. We'll hear you on rebuttal. Thank you. Thank you, Your Honor. Mr. McGuire? Thank you, Your Honor. May it please the Court, Robert McGuire from the Office of the New Jersey Attorney General for the Defendants Kyle Higgins, Katie Epperle, Mary Lippincott, and Janelle Clark. And I guess that's a good starting point, is to acknowledge that these are, in fact, individual defendants in this case, and that needs to be taken into account in the context of the relief that's being sought. But more importantly, I think we need to refocus in this appeal on what the key points are and who the central player in this set of facts is. And that's really foster child one. The key determination here isn't about what happened with the lashes. They're not the key to what happened in this complaint. The key to what happened in this complaint is foster child one. And the undisputed fact is that a court in New Jersey which specializes in family law, which is specifically empowered to make custody determinations, ultimately determined it was in the best interest of foster child one not to continue to be in the lashes home. Well, they're not challenging that here. As I understand the challenge, and Mr. Laffey on rebuttal can clarify, but as I understand the challenge, they're saying that the district court erred because the district court was focused on the putative religious beliefs of the biological parents. But the record says nothing about that, correct? The record says nothing about the biological parents. And as I understand Mr. Laffey's argument, he's saying this isn't about the biological parents' religious beliefs. This is not a case where a biological parent said, I want my child to be fostered, but I want my child to be raised as an Orthodox Jew. And these parents who are Christian refuse to do that. That's not this case. This case is, as I understand it, the parents saying, we have a right to our religious beliefs. And when we take in a foster child, we are not obliged to discard or hide or alter our religious beliefs. Isn't that basic? Well, their basic complaint is that they were deprived of the right to be foster parents because of that religious view. And it has to be viewed in the context of, no, what happened here was there was a in the context of this particular child. Let me just jump in here on two things. One, the Lashes weren't invited and they were under state law entitled to notice to go to that hearing and they weren't given that. Is that correct? That is what's alleged in the complaint, Your Honor. And so we take that as true. And so we have at least a procedural infirmity with the state court decision. Also, the Supreme Court, as far as I know, has addressed the best interest test only once. And that was in Paul Morby's Sedoti when it said that when a court conducts the best interest analysis, it cannot account for discrimination. That was in the context of an interracial family that was we're trying that the court was trying to decide which branch of the divorced mom or divorced dad would get it. And they counted for interracial marriage and a degree of societal discrimination that existed in Florida at the time. And so there seems to be some recognition, at least in that case, that the best interest test has to be tempered by constitutional guarantees. And if the Lashes are bringing a claim that says that best interest analysis violated our constitutional rights, isn't that a viable claim? It is not, Your Honor. There are a couple of reasons why. One, the federal courts have acknowledged that there is a domestic relations exception to its jurisdiction. So this court cannot step in and say, I disagree with the reasoning. Supreme Court did in Paul Morby's Sedoti. It did not, Your Honor, say that the federal court has jurisdiction over a custody determination. And with respect to the alleged discrimination here, again, it has more to do with views on sexuality, which are not. Let me make sure I understand what you're saying. You're saying the federal courts have no jurisdiction over custody determinations? Correct. All right. So a state in 1940 that said African-Americans are excluded from our foster system, that's not actionable in a federal court under the Equal Protection Clause? It would not be in a federal district court if the highest court in the state determined that that custody determination was infirm or was not infirm, but was based on a discriminatory reason that could be reviewed. But as a first matter, it cannot come to a district court to say, we want you to review a custody determination because we think you would have a different outcome. It has to go through the state court. And part of the reason why is because the state court would have a full record as to what the actual reason for the determination was. But there's no full record here. I mean, we've got a real problem here where there's no full record, where the lashes weren't invited. They were guaranteed by New Jersey statute a right to show up, a right to notice, at least. And they weren't given that. And so this claim that there's this general rule that allows the establishment of a full Well, Your Honor, let's address that because one, there is no huge procedural infirmity with the state procedures. There is a right under a statute for notice and the opportunity to be heard, which includes only the right to appear to give a statement. You are not a party. You do not have a right to take discovery. You do not have a right to present other evidence other than your own statement. But rights typically imply remedies. When a person has a right, they typically have some degree of remedy. What's the remedy if a person has this right to notice, isn't given the notice, and then has an adverse consequence, at least to them, as a result? No remedy there? Your Honor, there is a remedy in the state court to ask for that to be reviewed, but there is no constitutional infirmity because as numerous courts have held, foster parents do not have a liberty interest in the continuation of a foster child relationship. That's been held by the Second Circuit, by the Fourth Circuit, the Fifth Circuit, the Sixth Circuit, the Seventh Circuit, the Ninth Circuit, and the Eleventh Circuit. Certainly, they can be denied the foster relationship for any reason, but they can't be denied the foster relationship for a discriminatory reason. You're not arguing, are you, that New Jersey could prohibit, you know, Muslims from being foster parents, and as long as they don't, they're not honest about it, it's unreviewable by a federal court? Is that your argument? That is absolutely not the state's argument, Your Honor. The argument is, in the context of this particular child, an instance arose where this child could be adopted by a same-sex couple, and it then became incumbent to have a conversation with the child about what they would feel about being placed with a same-sex couple. In light of the Lash's views about sexuality, it also became incumbent to ask them if this child were to express an interest in a same-sex romantic relationship. So a New Jersey child is in line to be adopted by a Sunni Muslim couple, and then New Jersey gets to talk to the child about that, right? Absolutely. And if the child is currently being fostered by Shiite Muslims, then New Jersey has a right to take the child away from the Shiite Muslims because there's a controversy about Sunni versus Shiite? Your Honor, that's not what I'm arguing at all. What I'm saying is that the judge who ultimately made this determination took into account all sorts of factors, and a judge independently, not the individual defendants here, made a final determination that based on the totality of the facts, that judge felt it was in the best interest for the Lashes not to continue to be the foster parents. Is there a record of what the judge thought and determined? Is that in the record at all? It is not in this record, Your Honor. So the whole thing is a black box. I mean, that's part of the problem here, right? They're just asking for the case to proceed. What makes the case unusual is they don't want the case to proceed so that they can reinstitute the relationship with foster child one. They've abandoned that. Why don't you address the practical concern I expressed with Mr. Laffey? Should they just go back and apply to be foster parents? And wouldn't it be sort of a given that they would be reinstated as foster parents, given the fact that they have a track record of being foster parents? Your Honor, based on the facts in the complaint, all we know is that the license was suspended at some point. The fact that they were not removed from consideration as being foster parents is demonstrated by their own pleading, which says that somebody came to do the physical inspection of their home as part of the renewal of their license to be foster parents. So, yes, there is the opportunity to continue to be foster parents. How does that work? Do they go to a family court? Do they go to some administrative body? Do they just fill out a form? How does that work? They would go through the youth. There is an inspection system that's done by DCPP that takes into account all sorts of factors, including the physical structure of the home, which is an inspection that was actually done, and then other factors to determine whether your license can be renewed. They have not, since it's been suspended, at least as alleged in the complaint, have not sought to have that done. So we don't know what the basis of suspension is. The basis of suspension could be that a court determined that a child should be removed from their home, and it could be as simple as that. The only thing before us is to determine whether or not the constitutional rights have been violated by the government in the way they went about this investigation. Is that correct? It's that, Your Honor, but also it should be taken into account. The specific relationship of foster parents to foster children and to the state is as follows. Well, we consider that to determine whether or not there's been a violation of the First Amendment or equal protection, but the only thing before us is whether the plaintiffs had their constitutional rights violated. We're not involved in anything else at this point. And of course, they claim that if they were, they want injunctive relief. But the only issue for us to determine is whether or not those foster parent rights were terminated and they were removed for any consideration. If in doing so, you violated their constitutional rights. There's nothing else before us. Is that correct? That is their claim. What I want to put for the court in context is the relationship between a foster child, foster parents in the state is as follows. The relationship between the state and the foster parents is a contractual one. They agree to be temporary caregivers. And it's, in essence, acting as the state on behalf of the state to temporarily take care of children in their place. So the relationship of the foster parent to the foster child is not the same as the relationship of a natural parent to a natural child. And our job, the issue for us is to determine whether in making that determination you violated their constitutional rights. There's nothing before us except that. Is that correct? That is correct. And in taking that into account, I need to point out the job of caseworkers necessitates having difficult, some conversations that people would say are taboo, and to put into the mix for a court to consider factors that otherwise people would say, well, that doesn't seem right. And a typical example of that is a male child who has been removed from a home with an adult male who has abused them will often say, I do not want to be placed in a home with another adult male. And a court, now, people would say, oh, my God, you can't eliminate half of the population as a potential foster for this child. And again, I bring it back. The focus here should be foster child one. And the considerations here were as to foster child one. In the circumstance of that male child who says, I don't want to be in a home with an adult male, a court obviously could take into account the fact that that child would feel that way and could be terrorized and psychologically damaged by being placed into a home that included a male. Now, that said, in other contexts, you would say, well, you can't do that. You can't eliminate all men as potential fosters for that child. But in the context of making a best interest determination, a court is entitled to know that information. And I bring it full circle to the fact that ultimately what they're saying here is that these four individual defendants denied them of their rights to continue as foster parents. And it's just not true. A court did it. And to the extent that they claim otherwise. That might be the actual issue, the ultimate issue before the state court. But the only issue before us is whether in making your determination, the constitutional rights of the plaintiffs were violated. And so it comes down to us to determine whether they put forth sufficient facts to avoid a motion to dismiss in which they alleged sufficient facts to show that their First Amendment rights were violated and their equal protection rights were violated. And why do you have to argue anything other than they didn't allege enough facts in the avoid a 10B6 motion? That is true. I do want to make two points because my time is running out. One is that to the extent that they say that my clients did anything in the hearings under the Ernst case and the BS versus Somerset County case, caseworkers who make recommendations formulate them or present them to the court have absolute immunity the same way that prosecutors do. And I would also urge this court, although the district court did not reach the question of qualified immunity to reach it, because clearly there is not a factually analogous case here that would inform these particular defendants that what they were doing was violating constitutional rights. The district court didn't determine it. But if this court did somehow remand back, the first thing we would ask that court to do is make a determination on that. And we could be that just doesn't that doesn't affect the injunctive release. Right. I mean, that's just a damages issue. Correct. But we would still be back in the court. Also, the court also did not rule on the lab case. What do you have to say about that? Well, with respect to the law against discrimination, your honor, what the judge said is it's not a public accommodation. The Doe case and the K.J. case, Lowry are right on point, and they are much more in line with the statute. The statute describes 43 different places that are public accommodations, and all of them have the common characteristic that it is a place where a huge crowd of people can be expected to gather together as one. The state court decisions that say that state agencies should be involved go against the plain language of the statute, the intent of it. And part of the reason that L.A.D. probably is passed is to make these places where large gatherings occur that aren't the government subject to discrimination laws. Because as here, the plaintiffs could bring a New Jersey Civil Rights Act claim or a section 1983 claim for violation of their religious, of their right to religious freedom. So they have that opportunity. L.A.D. is actually something that could be considered as an appendage to that to take the protections against discrimination that, by virtue of law that already exists in the New Jersey Civil Rights Act in 1983, and apply that in a place where people gather en masse. So we think that the Doe case and the KJX Rel case are much more in line with the statutory language and its plain meaning. Because there are a small subset of state-run agencies or places like libraries and schools that are listed, and certainly the legislature knew that there were a whole bunch of other agencies, and it would have been very simple to say, aside from libraries and these schools, it applies to every public office. And they didn't do that. I just want to follow up on make sure I understand the state's position, because I certainly appreciate that these family law matters are consummate state law matters. I appreciate what you said about foster parents acting as sort of proxies on behalf of the state, but what makes this case complicated is, you know, when it comes to religious speech, there is a lot of case law from the Supreme Court that says that states have the ability to sort of speak religiously. The government has the ability to speak religiously, right? You know, you've got a few cases that say that, but that's government speech. This isn't really government speech, right? This is the Lashies' speech. And the Lashies', as I understand their argument, they're saying, you know, we, the state of New Jersey took sides against our religious speech. And my question to you is, did the state do that? And if the state did do that, is it actionable? Or is your argument that, yes, the state did do that because, you know, we had to sort of, once we were considering the same-sex adoption in Illinois, you know, we had this conflict, right, between that situation and the religious beliefs of the Lashies', so the state was put in the position of having to pick sides. And we had to pick sides based on what we perceived to be the best interest of the child, and we did that, but it's not actionable. Is that your argument? It's not the argument that the state took sides, Your Honor. The argument is that the court took into account the full panoply of all the facts, one of which, and perhaps the key fact, is in the meeting right before the hearing, a direct inquiry was addressed to the Lashies' which said, if this child expressed to you an interest in a same-sex relationship, would you reject the child? That seems to me to be a very, very pertinent question. And what is not included in the complaint is the fact that the Lashies' said, of course we would not reject this child. We would accept them. Again, in the best interest of the child standard, if you were a court evaluating this circumstance, it's not the fact that they have a religious belief or even that they expressed it or that they held it, but that under a direct question, if a circumstance arose where a child who's been removed from one home and has been put into a temporary home was to express an interest in this type of relationship, would you reject this child? And would you put a child into a home where the prospective adoptive parents would not tell you, no matter what they answer to that question, of course I would always accept them and it would have no impact on a relationship whatsoever. But that's not in the record. It is, Your Honor. Within the complaint, it is specified that the Lashies' were asked the direct question. But what the state court accounted for is not in the record. Correct. The judge's ruling is not in the record, but the allegation here, Your Honor, that... Just as a general matter, discrimination cases can be very hard to prove. Very hard to prove. But also, discrimination cases are kind of hard to kick out at the 12B6 stage. Summary judgment is where they tend to be kicked out. There's a burden shift, a balance, and everything else like this. And this case went out at a 12B6 stage, at least a lot of it went out at that stage. And so the real question isn't, hey, what we are going to do and how we're going to find out about all these record developments right now. We just take the allegations and say, before we do the burden shift, before we do anything else like this, is there a plausible claim of discrimination? And it strikes me that if we're true to that plausibility analysis, and we've referenced that many, many, many discrimination cases are resolved on summary judgment without going to trial, and that very, very few are resolved at 12B6, at least a procedural posture tilts towards embracing these allegations and giving them the airing of plausibility. What do you say to that? And let me just add the addendum to Judge Phipps's question. You cited the complaint about the question being asked, would you accept? But I don't remember the complaint saying, the Lashie said, no, we would not accept a child who said that. There's nothing in the complaint that says that. It does not. But what it does not say is we answered that question that we would not reject the child. And you would expect that information to be included in the complaint. If it was, I mean, it's their pleading. They said they were asked the question. If they said in response. Okay. So you're saying they had to, their complaint had to answer the question, even if they didn't answer the question? I would think, Your Honor, if that, if they referenced that question being asked and the answer to that question was no, we would not have rejected the child. They would have included that information. Now that's speculation. We don't know. I think that's a reasonable inference, Your Honor. Okay. Go ahead. Do you have another question, Judge Phipps? No. Okay. Thank you, Mr. McGuire. Thank you very much. Thank you. We'll hear Mr. Laffey's rebuttal. Mr. Laffey, would you mind starting where Mr. McGuire focused that, you know, if this case is about child number one, then we don't, there's, there's no case or controversy left, correct? Because you've acknowledged that your clients have, have come to the realization or conceded that it would not be in the best interest of child one to, to reinstitute the placement. Uh, Judge, um, my clients were discriminated against on the basis of their religious belief. They haven't changed that religious belief. They still hold that religious belief. They still want to be foster parents. They cannot be foster parents if they're going to be discriminated against on the basis of their religious belief. That's two ifs. How do we know that they can't be foster parents and how do we know that they're going to be discriminated against, uh, in the future? Um, Judge, there, this, this was not just one caseworker. Okay. The, the meeting that took place, I think there were, I forget how many, but there were at least half a dozen people from the division in that meeting where my client was, um, uh, berated about her religious beliefs. One of the, um, um, attendees whose name we didn't have, they're, they're, they're Jane Doe. Okay. Suggested that the child would need psychological counseling because they now have this belief, basically saying that a belief that millions of Americans hold is actually a mental illness. Okay. It's pervasive within this office. And, and my clients deserve some type of judicial statement that the, that this is not permitted in judging these foster parents. Well, we're that, that, that raises the challenge. I mean, the, the court decides cases and controversies. We don't make statements. We don't issue press releases. But an injunction against the workers that were involved in this, however many we did determine there were that says you can't do this in the future, sends a message to the division. You can't do this in the future. Okay. Isn't it the case that this was idiosyncratic, that, that this, that this trouble that your clients have alleged in the complaint never would have happened if the prospective adoptive parents were different sex or, you know, isn't the fact that this was a same sex couple in Illinois, what sort of started this whole thing into motion? I don't know the answer to that judge. All my clients know is that the workers in this office exhibited hostility towards them as foster parents, as, as, as prospective adoptive parents, because they have a religious belief and they shared that religious belief. Let me just, let me just ask this question to pick up on, on judge Hartman's question, which is that federal courts have this case and controversy requirement. That's all we resolve. What if on your way out of the courtroom, your friend on the other side said, you know what, we're just going to, we're just going to reinstate your license to, uh, to be foster parents. Where, where, where's the case in controversy? Just assume that that happened, right? I mean, and, and assume that we meet the, that the exceptions to mootness voluntary cessation is, is, is let's just say for whatever reason, that's not existing. And same with capable of repetition, you had a baiting review. If that were to happen either on the way out of the courtroom, or maybe even before the case was filed to, to take mootness really off the table, you wouldn't have a case or controversy here, would you? Uh, I, my question to my, uh, uh, um, adversary would be, well, that's great, but are you also going to, uh, you know, treat them fairly and not discriminate against them? The rub with the case and controversy requirement is that it requires, uh, uh, uh, entry in fact that's concrete and particularized actual or imminent. And so once that's restored, I mean, I think you have a real uphill battle of showing that you would have a concrete particularized actual and imminent problem because they restored something. Now, maybe if that, maybe if there was trouble in the future, you might be very, very, very prompt on the litigation. You might do TROs or whatever else you want to do in the future. But if that, if that were given, if the licensure were restored before this case was filed, what's the case or controversy other than a generalized concern? Um, the, you know, as I said, judge, um, the, they would also need assurances. I think that, I mean, what's to say that the division, the division won't continue with this, uh, obviously, you know, uh, almost unwritten policy they seem to have, uh, against clients with my religious belief. I mean, that would be our argument, but, um, the fact of the matter is that the division has had a long time to reinstate my clients. Okay. And to this date, they haven't even bothered to explain to my clients why they were suspended. The only reason my clients found out is because a different department from a different office in the division mentioned it to them that they were suspended. So, um, you know, while, while I would have to address that, that mootness claim at a later date, um, you know, if that were the case, we're not there because the division hasn't done that. And I've had more than ample time to do that. But you haven't asked them to do it. We've asked them why, and we don't get an answer. You haven't asked to be reinstated. We haven't had, you have, are you sure the license is still suspended? Yes. And what steps, if any, have you taken to change that? We've asked them why we were suspended and we don't get an answer. Well, you're in litigation with them. I mean, it strikes me, it strikes me that the only thing that's really actionable here is the license suspension. And you've dropped your claim for official capacity, injunctive relief. And so to the extent that relief has to be tied to injury, that's, that's tough, right? Well, judge, you know, I think too, that this is where, um, perhaps, um, the, the lad claim, um, would be of some benefit to my client, um, because they, they, um, they could seek also, they could seek injunctive relief under lad, which, um, uh, based on this prior discrimination, that they not be discriminated in the future. All right. Thank you very much, Mr. Laffey. Uh, we understand your position. We understand New Jersey's position. Thank you, Mr. McGuire. The court will take the matter under advisement. Thank you, your honor. I appreciate your consideration.